**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 04:54 PM March 28, 2014**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JAMES W. WALLACE, | ) | CASE NO. 12-61185 |
| | ) | |
| Debtor. | ) | ADV. NO. 12-6120 |
| _____ | ) | |
| | ) | JUDGE RUSS KENDIG |
| LISA M. BARBACCI, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDOM OF OPINION (NOT** |
| | ) | **INTENDED FOR PUBLICATION)** |
| JAMES MIKSTAY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

    This adversary proceeding focuses on the allegedly fraudulent transfer of two vehicles. Lisa M. Barbacci, the chapter 7 panel trustee ("Trustee"), argues that James W. Wallace ("Debtor") fraudulently transferred a 1997 Chevrolet Corvette and 2006 Hummer H3 in violation of 11 U.S.C. § 548(a)(1)(A)–(B) and equivalent state law provisions. This opinion focuses on the transfer of the Corvette. On April 29, 2013, Trustee filed a motion for summary judgment on the issue of whether Debtor's transfer of the Corvette to James Mikstay ("Defendant") was in violation of § 548(a)(1)(B) of the United States Bankruptcy Code ("the Code"). Defendant filed a reply. On July 26, 2013 the court issued an opinion denying Trustee's motion for summary judgment. On February 28, 2014, Defendant filed his own motion for summary judgment arguing that the transfer of the Corvette was for reasonably equivalent value, entitling him to summary judgment on Trustee's claim under § 548(a)(1)(B). Trustee filed a brief in opposition on March 13, 2014.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## Facts

Debtor, prior to filing bankruptcy, operated two limited liability companies, Wallace Financial Consulting, LLC ("WFC") and 911 Credit Repair & Consulting, LLC. The businesses were engaged in loan consulting and credit repair services. Both businesses ceased operations before Debtor's chapter 7 filing on April 24, 2012.

Defendant worked for WFC from approximately September 2010 until May or June 2011. His compensation was a base salary of $500.00 per week plus commissions. While Defendant worked at WFC he was not always paid on time or in full. WFC continues to owe salary and commission payments to Defendant.

Before filing for bankruptcy, Debtor owned a 1997 Chevrolet Corvette with a fair market value of approximately $8,500.[1] To satisfy unpaid wages owed from WFC to Defendant, Debtor and Defendant entered into a purchase agreement where Defendant agreed to pay $3,000.00 cash to Debtor and forgive $4,000.00 in wages owed to him by WFC in exchange for the Corvette. The parties completed the transaction and Defendant took title to the vehicle. After taking possession, Defendant made repairs and improvements to the Corvette. Invoices for these repairs are included with Defendant's deposition transcript and total approximately $4,000.00.

## Arguments

Defendant's motion for summary judgment argues that Trustee failed to establish that the transfer of the Corvette between Debtor and Defendant was for less than reasonably equivalent value. Specifically, Defendant argues that his payment of $3,000.00 in cash and $4,000.00 in forgiveness of unpaid salary are reasonably equivalent to the $8,500.00 value of the Corvette at the time of the transfer. To support his position, Defendant makes the following arguments:

(1) Debtor's improper control over WFC should result in WFC's corporate veil being pierced, which makes Debtor personally liable for WFC's debts and results in any forgiveness of WFC's debts constituting value to Debtor;
(2) Because Debtor and WFC are sufficiently related, the "indirect benefit" rule allows Defendant's forgiveness of WFC's unpaid wages to count as value to Debtor;

---

[1] The exact value of the Corvette at the time of the transfer is not completely clear. Defendant obtained a postpetition appraisal on October 29, 2012 by Northwest Auto Sales that values the vehicle at $8,500.00. In his deposition testimony, Defendant indicates Northwest's figure represents the value of the Corvette before he made any repairs or improvements. Although the appraisal isn't clear on this point, the court will accept $8,500.00 as the value of the Corvette at the time of transfer.

(3) Debtor's available bankruptcy exemptions in the Corvette, as well as the cash paid by Defendant post-petition to fix the Corvette, cover the vehicle's value; and
(4) Defendant made investments in the Corvette after the transfer, which would result in the unjust enrichment of the bankruptcy estate if the Corvette is recovered.

Trustee argues that factual disputes remain regarding whether Debtor received reasonably equivalent value for the Corvette, making summary judgment inappropriate. Specifically, Trustee argues that there is no evidence that WFC was Debtor's alter ego under Ohio law or that the corporate veil should be pierced. Trustee also challenges the validity of the application of the "indirect benefit" rule to the current case. Therefore, Trustee argues, because Defendant's forgiveness of WFC's debts should not be included in the calculation of reasonably equivalent value, Defendant's transfer of $3,000.00 in cash is not reasonably equivalent to the Corvette's $8,500.00 value. Trustee's brief does not address Defendant's third and fourth arguments.

## Law and Analysis

Defendant's motion for summary judgment asks the court to find that Debtor received reasonably equivalent value for the transfer of the Corvette, entitling Defendant to summary judgment on Trustee's § 548(a)(1)(B) fraudulent transfer claim. Section 548(a)(1)(B) requires that a debtor had an interest in the property transferred, the transfer was within one year of the petition date, the debtor received less than reasonably equivalent value, and one of four other requirements (such as the debtor being insolvent or that the transfer was made to an insider). 11 U.S.C. § 548(a)(1)(B). Reasonably equivalent value is a two-step inquiry that is the center of the current dispute. First, a court must consider whether the Debtor received any value. Lisle v. John Wiley & Sons, Inc. (In re Wilkinson), 196 Fed. Appx. 337, 341 (6th Cir, 2006). Second, the court must determine if the consideration the debtor received for the transfer was reasonable. Id. It is clear that Debtor received value in the current case, the issue is whether Defendant's forgiveness of wages owed to him by WFC constitutes reasonable value to Debtor.

On a motion for summary judgment, facts and reasonable inferences are viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If there are no genuine issues of material fact, and the movant establishes it is entitled to judgment as a matter of law, a court is instructed to grant summary judgment. Fed. R. Bankr. P. 7056. "The moving party has the burden to show that no genuine issue of material fact exists." Southern Rehabilitation Group, P.L.L.C. v. Secretary of Health and Human Services, 732 F.3d 670, 676 (6th Cir. 2013). If the moving party meets its burden, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

I. **Summary Judgment is Inappropriate on a Piercing the Corporate Veil Theory**

The general rule is that a corporation is separate and distinct from the people who own the entity, protecting officers, directors, and shareholders from the corporation's liabilities. Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc., 617 N.E. 2d 1075, 1085 (Ohio 1993). However, the legal position that a corporate entity and its owners are separate and distinct

is "a mere fiction, introduced for convenience in the transaction of [the entity's] business, and of those who do business with [the entity]; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded." Id. at 1085. In order to deal with abuses, courts developed doctrines, such as alter ego liability and piercing the corporate veil, which allow the corporate form to be ignored under appropriate circumstances.

Defendant raises the legal argument that WFC is the alter ego of the Debtor, allowing the court to pierce the corporate veil, resulting in Debtor being liable for WFC's debts.[2] Under Defendant's theory, if Debtor is liable for the wages WFC owes Defendant, then forgiveness of these wages constitutes value to Debtor. In order to succeed on his motion for summary judgment, Defendant must satisfy each of the three piercing the corporate veil prongs adopted by the Supreme Court of Ohio:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own,
> (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and
> (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

Id. at 1086. In other words, "[w]hen a shareholder exercises such control over a corporation that the corporation becomes the shareholder's alter ego, and when the shareholder misuses his control of a corporation to commit specific, egregious acts that injure a third party, then it is unjust to allow the shareholder to use the corporate form as a shield to escape the consequences of those wrongful acts" Minno v. Pro-Fab, Inc., 905 N.E.2d 613, 617 (Ohio 2009).

When evaluating the first prong, courts consider a number of factors, including:

> (1) grossly inadequate capitalization,
> (2) failure to observe corporate formalities,
> (3) insolvency of the debtor corporation at the time the debt is incurred,
> (4) shareholders holding themselves out as personally liable for certain corporate obligations,

---

[2] Alter ego liability and piercing the corporate veil are related, but different, concepts. Piercing the corporate veil "asks a court to hold A vicariously liable for B's debts," while alter ego liability "asserts that A and B are the same entity and therefore liability is direct." United States Tr. v. Zhang (In re Zhang), 463 B.R. 66, 81 (S.D. Ohio 2012). Defendant's motion for summary judgment uses both alter ego and piercing the corporate veil language, but appears to at least somewhat conflate the two ideas. The court reads Defendant's motion as more clearly raising a piercing the corporate veil argument. The court also notes that alter ego and piercing the corporate veil claims analyze many of the same factors, making summary judgment inappropriate in the current case under either theory. See Brennan v. Slone (In re Fisher), 296 Fed. Appx. 494, 505–07 (6th Cir. 2008); Taylor Steel, 417 F.3d at 605 ("The first element [of the piercing the corporate veil test] is a restatement of the alter ego doctrine . . . ."); Toler, 666 F. Supp. 2d at 886–87; In re Zhang, 463 B.R. at 79–83.

(5) diversion of funds or other property of the company property
for personal use,
(6) absence of corporate records, . . .
(7) the fact that the corporation was a mere facade for the
operations of the dominant shareholder(s), . . .
[(8)] commingling of business and personal finances,
[(9)] whether separate books and records were kept,
[(10)] whether the company had issued stock, and
[(11)] whether there was misappropriation of company funds or
property.

Coughlin Chevrolet, Inc. v Thompson (In re Thompson), 458 B.R. 409, 419 (S.D. Ohio 2011). Piercing the corporate veil is an equitable remedy, so courts may evaluate factors other those listed above. Id.; United States v. Toler, 666 F. Supp. 2d 872, 886–87 (S.D. Ohio 2009). The presence of every factor is not required. Toler, 666 F. Supp. 2d at 886–87.

In connection with the second prong, the "mere control over a corporation is not in itself a sufficient basis for shareholder liability." Belvedere, 617 N.E.2d at 1086. Instead, there must be control along with some type of wrongdoing, such as "fraud, an illegal act, or a similarly unlawful act." Dombroski v. WellPoint, Inc., 895 N.E.2d 538, 545 (Ohio 2008); In re Thompson, 458 B.R. at 419. "Ohio Courts of Appeals have consistently interpreted the 'illegal act' requirement to mean a harmful, unfair, unjust, inequitable, or wrongful act rather than solely a criminal one." Taylor Steel, Inc. v. Keeton, 417 F.3d 598, 608 (6th Cir. 2005). Because many small and closely-held businesses are under the control of a single individual or very small ownership group, a piercing the corporate veil standard that does not requiring wrongdoing would result in liability "virtually every time a closely held entity is sued." In re Thompson, 458 B.R. at 419 (citing Dombroski, 895 N.E.2d at 544–45). Such a rule would put many honest small businesses owners at risk of having the advantages of the corporate form completely eviscerated, an outcome at odds with the policy behind the corporate form. Id. at 419. The final element requires that the owner's improper control over the entity be the proximate cause of the injury. Belvedere, 617 N.E.2d at 1086.

Defendant's first piece of evidence in support of piercing the corporate veil is that WFC did not have its own business telephone line, and instead Debtor and Defendant used their personal telephone lines for business purposes without initially identifying themselves under their corporate name. However, close connectedness between owner and corporate entity, without more, is insufficient to pierce the corporate veil. In re Thompson, 458 B.R. at 419. Defendant also contends that Debtor's acceptance of debt forgiveness in exchange for the Corvette indicates that Debtor viewed himself and WFC as one entity. While such evidence may be one of many factors a court evaluates to support a decision to pierce the corporate veil, such evidence is inadequate alone. Defendant also contends that Debtor commingled funds between himself and WFC, but has produced no evidence to support the claim. In total, the evidence provided is inadequate for the court to grant summary judgment to Defendant.

Even if the court was sufficiently convinced that Debtor and WFC satisfied the first element of the Belvedere test, the court does not have sufficient evidence to support a finding

5

that the second element is satisfied. The second element requires that the control over the corporate entity was "exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity." Belvedere, 617 N.E.2d at 1086. Absent additional evidence, the court is not convinced that forgiving a debt in exchange for an automobile is the type of fraud or illegal act envisioned by the Supreme Court of Ohio when it fashioned the test for piercing the corporate veil. Id. at 1086; see also In re Thompson, 458 B.R. at 419–20 (holding that a corporation's failure to pay a debt due to insufficient cash flow "is not by itself sufficient to find fraud or unlawful action").

## II. Summary Judgment is Inappropriate on an "Indirect Benefit" Theory

The Sixth Circuit has recognized the "indirect benefit" rule, which states that reasonably equivalent value need not always go directly to the debtor, but instead a debtor may indirectly receive value through a third party. In re Wilkinson, 196 Fed. Appx. at 342. The Sixth Circuit explained the rule as follows:

> [A] debtor may sometimes receive "fair" consideration even though the consideration given for his property or obligation goes initially to a third person.... [T]he transaction's benefit to the debtor need not be direct; it may come indirectly through benefit to a third person.... If the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved, and [the statute] has been satisfied—provided, of course that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up.

Id. at 342 (quoting Rubin v. Mfrs. Hanover Trust Co., 661 F.2d 979, 991–92 (2d Cir. 1981)) (internal quotation marks omitted). When measuring the value of an indirect benefit to a debtor, courts require the benefit to be "concrete and quantifiable." In re Wilkinson, 196 Fed. Appx. at 342. In In re Wilkinson, the debtor personally guaranteed the debt of a business in which he was an owner in order to receive a new shipment of inventory. Id. at 342–33. Under a "net effect" valuation, the Sixth Circuit found a concrete and quantifiable indirect benefit to the debtor because paying the corporate debt reduced his personal indebtedness by the same amount. Id. In In re Gerdes, the court determined that the debtor's payment of a business debt, even though the debt was not personally guaranteed, was a sufficiently concrete benefit to the debtor because two Ohio statutes would have imposed personal liability on the debtor if the business debt was not paid. Harker v. Ctr. Motors, Inc. (In re Gerdes), 246 B.R. 311, 313–15 (Bankr. S.D. Ohio 2000).

In support of his argument, Defendant notes that Debtor's bankruptcy petition's lists numerous WFC debts that Trustee has not contested. Defendant believes that the inclusion of the WFC creditors is an admission that Debtor receives an indirect benefit whenever WFC debts are paid. The court does not agree. Simply because a debt is scheduled in a bankruptcy petition does not mean the debt will be paid or even that the debt is valid. The record is not sufficiently developed for the court to find that Debtor received a "concrete and quantifiable" benefit.

6

Additionally, the court addressed the issue of reasonably equivalent value under the indirect benefit rule in an earlier decision in this same adversary proceeding. Barbacci v. Mikstay (In re Wallace), 2013 WL 3878165 (Bankr. N.D. Ohio 2013). The court noted in its prior decision that the record was not sufficiently developed to grant summary judgment for the Trustee under the indirect benefit rule. Similarly, especially considering very little additional evidence has been provided, summary judgment for Defendant on the indirect benefit rule is also inappropriate.

### III. Summary Judgment is Inappropriate on Debtor's Waiver of Exemptions

Defendant also argues that if Debtor had not transferred the Corvette, Debtor could have exempted portions of the equity in the vehicle under Ohio law. Debtor contends that $4,600.00 in exemptions would apply to the Corvette ($3,450.00 for a motor vehicle under O.R.C. 2329.66(A)(2) and $1,150 "catch all" exemption under O.R.C. § 2329.66(A)(18)), when combined with Defendant's approximately $4,000 out-of-pocket improvements to the vehicle, are greater than the vehicle's fair market value of $8,500.00. Defendant does not explain why the cost of Defendant's post-transfer improvements are relevant to Debtor's potential exemptions or to the question of whether Debtor received reasonably equivalent value for the Corvette.[3]

While Defendant's exact argument is not clear, the Code, in § 522(g), addresses the availability of exemptions after a transfer. Section 522(g) states that a debtor may exempt:

> property that the trustee recovers [via a fraudulent transfer], to the
> extent that the debtor could have exempted the property . . . if such
> property had not been transferred, if—
> (1)(A) such transfer was not a voluntary transfer of such property
> by the debtor; and
> (B) the debtor did not conceal such property.

There are two different theories for the application of § 522(g). In In re Ziegler, 20 B.R. 449 (Bankr. S.D. Ohio 1982), the court adopted the "absolute" approach, holding that "any voluntary relinquishment of a property interest prepetition waives any exemption that might have been claimed in that property under 11 U.S.C. § 522(g)." However, in In re Hunter, this court adopted a different and more lenient approach which requires the trustee to have taken some recovery action before the exemption prohibition from § 522(g) takes effect. Silagy v. Marzilli (In re Hunter), 2008 WL 2076750, at *5 (Bankr. N.D. Ohio 2008).

In the current case, Trustee's commencement of the current adversary proceeding satisfies the requirement of a recovery action. Therefore, if Debtor's transfer of the Corvette was voluntary, he is prohibited from claiming an exemption in the vehicle. While it appears that the Corvette's transfer was voluntary, the record is not sufficiently developed for the court to make a ruling on the issue. Summary judgment is inappropriate under Debtor's exemption theory.

---

[3] The court notes that an argument could be made that Debtor's available exemptions ($4.600.00) plus cash received from Defendant (approximately $3,000.00) are reasonably equivalent to the Corvette's value. However, under the facts of the current case, § 522(g) likely forecloses such an argument.

7

### IV. Summary Judgment is Inappropriate on Potential Unjust Enrichment to the Bankruptcy Estate

Defendant's final argument is that he has significantly increased the value of the Corvette by personally paying for repairs and through his own labor. If the bankruptcy estate is allowed to recover the Corvette, Defendant argues that his improvements to the vehicle will unjustly enrich the bankruptcy estate. Specifically, Defendant's testimony and documentary evidence suggest that $3,951.62 was spent fixing the Corvette. However, Defendant's unjust enrichment argument speaks to the amount of the bankruptcy estate's recovery (if any), not to whether the original transfer of the vehicle was in violation of § 548(a)(1)(B). If the court at a later date determines Trustee is entitled to recover the Corvette for the benefit of the bankruptcy estate, the amount of any recovery will be determined at that time.

### Conclusion

For the reasons outlined above, Defendant's motion for summary judgment is **DENIED**. An order will be issued simultaneously with this opinion.

It is so ordered.

# # #

**Service List**:

**Jack B Cooper**
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213

**Michelle Stine Barnoff**
PO Box 816
Uniontown, OH 44685

8